<div style="writing-mode: vertical">**United States District Court**
For the Northern District of California</div>

1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                                  NORTHERN DISTRICT OF CALIFORNIA

10                                          SAN JOSE DIVISION

11   NEUSTAR, INC., and QUOVA, INC.           )     Case No.: C 12-02574 EJD (PSG)
                                              )
12                          Plaintiffs,       )     **ORDER GRANTING-IN-PART**
            v.                                )     **MOTION TO COMPEL**
13                                            )     **PRODUCTION OF DOCUMENTS**
                                              )
14   F5 NETWORKS, INC.,                       )     **(Re: Docket No. 17)**
                                              )
15                          Defendant.        )
                                              )
16   _____)

17          Plaintiffs Quova, Inc. ("Quova") and Neustar, Inc. ("Neustar") (collectively, "Plaintiffs")

18   sued F5 Networks, Inc. ("F5") for breach of a licensing agreement.  Plaintiffs now move to compel

19   documents associated with its first set of Requests For Production ("RFPs").  F5 opposes.  On

20   March 19, 2013, the parties appeared for oral argument.  Having considered the papers and the

21   arguments of counsel, the court GRANTS-IN-PART Plaintiffs' motion.

22

23                                  **I.       BACKGROUND**

24          In September 2009, Quova[1] entered into an agreement with F5 (the "Agreement") to license

25   certain geographic location and related network data associated with Internet protocol addresses

26   ("Geopoint Data").  The parties' core dispute concerns the scope of this agreement.  Plaintiffs

27

28   _____
     [1] Neustar acquired Quova in 2010.
                                                  1
     Case No.: C 12-02574 EJD (PSG)
     ORDER

United States District Court
For the Northern District of California

argues that the scope is limited to one "use case," or purpose, only – to identify the geographic location of visitors and allow the website owner to direct traffic and optimize network efficiency by balancing the traffic load ("traffic management and load balancing"). [2]  Plaintiffs allege that F5 exceeded the scope of the Agreement by using the Geopoint Data for other unauthorized use cases, including geo-targeting content, fraud detection and prevention, digital content distribution and management, digital content distribution and management, and legal and regulatory compliance. Plaintiffs also contend that F5 violated the Agreement by failing to include the required use case restriction in its sublicenses with customers. [3]  F5 interprets the agreement's scope more broadly, [4] arguing that the Agreement allows general use of the Geopoint Data by "all products and applications running on F5's BIG-IP devices." [5]

Regarding the instant disagreement, on October 1, 2012, Plaintiffs served several document requests on F5: RFP Nos. 10, 19, 45-48, 61-65, 67, 69-71, 74-79, 84-91, 95-96, and 102. [6]  These RFPs seek documents regarding F5's use of data obtained from Quova under the Agreement.  After F5 objected to several of the RFPs, arguing they are irrelevant, overbroad, and unduly burdensome, [7] the parties discussed limiting the initial document requests of both parties.  Plaintiffs proposed limiting each party's initial search to (1) email archives of five custodians on each side, (2) within the time frame of the Agreement and related negotiations, and (3) using a set of search terms proposed by the other side. [8]  Plaintiffs proposed the following terms:

---

[2] *See* Docket No. 17 at 5.

[3] *See id.* at 9.

[4] *See* Docket No. 19 at 2-3.

[5] *Id.* at 3.

[6] *See* Docket No. 18, Ex. A.

[7] *See id.* Ex. B.

[8] *See id.* Ex. C.

2

Case No.: C 12-02574 EJD (PSG)
ORDER

- "use" (near3) "case*"
- "traffic manag*"
- "load balance*"
- "fraud prevent*"
- "context" (near3) "aware"
- "local* content"
- "target*" (near3) "market*" (or) "advertis*"
- "territory" (near3) "right*"
- "trade" (near3) "restrict*"
- "trade" (near3) "restrict*"
- "compl*" (near3) "regul*" (or "legal (or) contract*"
- "cloud" (near3) "balance*"
- "attack" (near3) "report*"

F5 disagreed, arguing that the proposed terms would result in extraordinary burden.  Instead, F5

proposed an alternative set of search terms, which it claimed would identify "all relevant emails":[9]

- "Quova*"
- "Neustar*"
- "geolocat*"
- "geo-locat*"
- "geo locat*"
- "geopoint*"
- "geo-point*"
- "geo point"
- "basic (near 3) data"
- "premium" (near3) "data"
- "geo-information"
- "geo info"

Unfortunately, the parties were unable to agree on search terms, and so Plaintiffs filed this motion.

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 26(b) provides that the parties may obtain non-privileged

documents that are "relevant to any party's claim or defense."[10]  The information need not be

---

[9] *See id.* Ex. D.

[10] Fed. R. Civ. P. 26(b)(1).

3

Case No.: C 12-02574 EJD (PSG)
ORDER

admissible at trial if it appears to be "reasonably calculated to lead to the discovery of admissible evidence."[11]

Regarding electronically stored information, a party need not provide such discovery if the requesting party shows such information is "not reasonably accessible because of undue burden or cost."[12] The court may nevertheless order such discovery if the requesting party, in turn, shows "good cause."[13] The court is required to limit discovery if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from a less burdensome source, (ii) the requesting party had ample opportunity to seek the discovery elsewhere, or (iii) the burden or expense of the proposed discovery outweighs the likely benefit, all things considered.[14]

### III. DISCUSSION

As a preliminary matter, F5 argues that Plaintiffs did not meet and confer as to the issues in this motion. Before bringing a motion to compel, a party must meet and confer in good faith with opposing counsel.[15] Looking through the record provided by counsel, while the parties agreed on little in their communications prior to the filing of this motion, they did discuss the RFPs and search terms at issue.[16] Although the court of course would not object to parties settling discovery disputes without court intervention, the parties here seem to have reached a genuine impasse.

---

[11] *Id.*

[12] *Id.* subsection (b)(2)(B).

[13] *Id.*

[14] *See id.* subsection (b)(2)(D).

[15] *See* Civ. L.R. 37.1.

[16] *See, e.g.,* Docket No. 23.

Case No.: C 12-02574 EJD (PSG)
ORDER

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Turning to the merits of the instant disagreement, it is well-established that a requesting party must show the discovery it seeks is relevant to its case.  Plaintiffs' theory of the case, in their own words, is centered on the following allegations:

- F5 failed to include the *use case* restrictions in its sublicenses with its customers

- F5 corporate representatives advised F5 field representatives that they could use Geopoint Data for any purpose on BIG-IP devices

- F5 field representatives advised its customers that they could use the Geopoint Data in support of use cases outside of and beyond the scope of the Agreement.

- F5 developed software modules to use the Geopoint Data for use cases other than traffic load management and balancing.[17]

Plaintiffs argue they are entitled to responses to the various RFPs because they constitute "discovery relating to F5's understanding and use of IP Geolocation use cases, outside of the Agreement, for a reasonable period of time."[18]

F5 responds that underlying issue of what it does with the licensed data is not in dispute, and that discovery should focus on that which is necessary to resolve the more fundamental contract interpretation question.

At first glance, F5's argument is compelling.  After all, why unleash a torrent of discovery on the issue of <u>what</u> happened when the parties basically disagree on <u>whether</u> what happened was authorized?  But the attraction of F5's argument fades when F5 acknowledges that, at least to date, F5 has not stipulated as to its usage of the Quova data outside of traffic management and load balancing.  Until F5 so stipulates, and in the absence of some great and undue burden on F5, Plaintiffs have a right to obtain information necessary to show the claimed breach.

---

[17] *See* Docket No. 17 at 6 (citing Docket No. 1).

[18] *Id.* at 15.

Case No.: C 12-02574 EJD (PSG)
ORDER

Addressing the issue of burden, F5 argues that applying Plaintiffs' proposed terms would return approximately 62,000 files, compared to F5's search terms, which would return approximately 19,900 files.[19]  F5 has filed declarations showing Plaintiffs' proposal would triple the cost of producing these documents, resulting in a total cost of about $225,000.[20]  Although F5 has already run high-level searches to determine the number of documents in question, if ordered to produce these documents F5 would have to review them further for responsiveness and privilege.[21]

The court sees no reason why the terms proposed by F5 will not suffice to provide sufficient relevant emails showing F5's usage of Geopoint Data with its customers.  Although Plaintiffs argue there may be some emails that do not reference "Quova" or "Neustar," that argument mischaracterizes the nature of F5's proposed search.  As F5 observes, F5 also has offered to produce emails referencing variations of "geopoint," which would cover the circumstance identified by Plaintiffs.  No search is ever perfect, and F5's proposed search is no different, but F5's search for variations of "geopoint" will likely yield sufficient documents showing F5's internal and customer communications about usage of the Geopoint Data, including the allegedly improper purposes such as fraud prevention and geo-targeting advertising.

Further, Plaintiffs have not shown good cause to justify including several particularly broad terms that they have proposed.  For example, Plaintiffs propose the search terms include "traffic management" and "load balancing," which would not be likely to yield data relevant to F5's breach of the Agreement because even Plaintiffs agree that F5 was allowed to use the data for those purposes.

Plaintiffs also have requested information starting from September 1, 2007, two years before the Agreement was formed.  But Plaintiffs have not shown why it is necessary to obtain

---

[19] *See* Docket No. 19-11 ¶¶ 8, 11.

[20] *See id.* ¶ 10.

[21] *See id.* ¶ 9.

Case No.: C 12-02574 EJD (PSG)
ORDER

documents beginning two years before the date the Agreement was formed, at a time when breach of contract would be impossible.

   In sum, F5 shall use the search terms it proposed to produce documents relevant to its usage of the data covered by the Agreement between F5 and Quova, for only the time period of the date of the contract to present.  F5 is required to produce any outstanding documents no later than May 10, 2013.  All other relief is denied.  F5's request for costs, which was not filed as a separate motion with an itemized declaration of costs and fees pursuant to the Civil Local Rule 37-4, is DENIED.

**IT IS SO ORDERED.**

Dated:  April 24, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

Case No.: C 12-02574 EJD (PSG)
ORDER