UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NEUSTAR, INC., a Delaware corporation, and QUOVA, INC., a Delaware corporation,<br><br>Plaintiffs,<br>v.<br><br>F5 NETWORKS, INC., a Washington corporation,<br><br>Defendant. | Case No.: 5:12-cv-02574-EJD (PSG)<br><br>**ORDER DENYING MOTIONS TO COMPEL**<br><br>**(Re: Docket No. 42, 46)** |

The parties are familiar with the facts of the case and of this particular dispute, and so the court provides only a brief summary of the background before setting forth its reasoning. Plaintiffs Neustar, Inc., and Quova, Inc. ("Plaintiffs") entered into a licensing agreement with F5 Networks, Inct., ("F5") under which F5 was permitted to use geolocation data provided by Plaintiffs for certain purposes on certain devices.[1] This action stems from a dispute over that agreement.[2] The parties disagree as to both the nature and scope of the limitations on the data's use.

---

[1] *See* Docket No. 1.

[2] *See id.*

Case No.: 5:12-cv-02574-EJD (PSG)
ORDER

1

The parties obtained a stay in this matter in order to focus their efforts on settlement talks.[3] Unfortunately, the talks did not result in an agreement. Judge Davila then granted the parties' two requests for extensions of discovery deadlines.[4] On the very last day of the extended fact discovery period, the parties filed multiple motions to compel production of additional evidence.[5] Of those motions, two remain pending. The first seeks to compel the production of communications between F5's sales agents and its customers as they relate to the use of Plaintiffs' data,[6] and the second seeks to compel production of two laptops used by Plaintiffs' employees.[7] Having considered the parties' papers and arguments, the court DENIES both motions.

## I.   LEGAL STANDARDS

Fed. R. Civ. P. 26(b) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." The relevant information "need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Relevance under Rule 26(b) is broadly defined, "although it is not without ultimate and necessary boundaries."[8]

Fed. R. Civ. P. 26(b)(2) provides one such a limit, mandating that the court limit the frequency or extent of discovery if: (1) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome,

---

[3] *See* Docket No. 36.

[4] *See* Docket Nos. 38, 41.

[5] *See* Docket Nos. 42, 43, 45, 46.

[6] *See* Docket No. 42.

[7] *See* Docket No. 46.

[8] *See Gonzales v. Google Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (internal citations and quotations omitted).

2

Case No.: 5:12-cv-02574-EJD (PSG)
ORDER

or less expensive;" (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action;" or (3) "the burden or expense of the proposed discovery outweighs its likely benefit." Upon a motion to compel brought pursuant to Fed. R. Civ. P. 37(a)(3), the moving party has the burden of demonstrating relevance.[9]

Regarding electronically stored information, a party need not provide such discovery if the requesting party shows such information is "not reasonably accessible because of undue burden or cost."[10] The court may nevertheless order such discovery if the requesting party, in turn, shows "good cause."[11] The court is required to limit discovery if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from a less burdensome source, (ii) the requesting party had ample opportunity to seek the discovery elsewhere, or (iii) the burden or expense of the proposed discovery outweighs the likely benefit, all things considered.[12]

## II. DISCUSSION

### A. Plaintiffs' Motion to Compel "Compliance With Discovery Order"

Plaintiffs' motion ostensibly seeks to enforce this court's discovery order of April 24, 2013,[13] arguing that the order required F5 to produce all documents from all sources in its control.[14] Plaintiffs also argue that the evidence is necessary to rebut anticipated attacks on their damage estimate.[15] F5 rejects these claims, arguing that the court's April 24 order was limited to documents held by five custodians delineated in the moving papers and that the burden of

---

[9] *See Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995).

[10] Fed. R. Civ. P. 26(b)(2)(B).

[11] *Id.*

[12] *See id.* subsection (b)(2)(D).

[13] *See* Docket No. 30.

[14] *See* Docket No. 42 at 2-3.

[15] *See id.* at 3.

3

Case No.: 5:12-cv-02574-EJD (PSG)
ORDER

producing additional documents this late in the discovery process is grossly disproportionate to any benefit that the documents may provide.[16]

F5's interpretation of this court's order is correct. The papers underlying that motion explicitly reference the "five custodians to be searched."[17] The motions further represented that the parties had reached an "agreement to move forward with some initial email discovery as to [five] key custodians,"[18] such that the lingering disagreement was limited to the adequacy of the search terms to be used in locating relevant documents.[19] The court issued its ruling with that understanding in mind[20] and now resolves any lingering doubts as to its meaning: under the April 24 order, Plaintiffs are entitled only to documents responsive to the requests at issue that were in the possession of Calvin Rowland, Nate Meyer, Scot Rogers, Dan Matte, or Mike Schrock.

Plaintiffs also have failed to demonstrate that the benefit to their damages argument would be sufficient to justify the burden on F5. Plaintiffs failed to timely depose F5's third-party customers who may have been able to speak directly to the way they used Plaintiffs' data. Plaintiffs themselves highlighted an email that pointed them directly to an F5 employee with information relevant to their purposes, and yet Plaintiffs also failed to depose that individual. While Plaintiffs were certainly entitled to spend their deposition budget and other resources as they see fit, the court is loath to relieve Plaintiffs of the consequences of those choices.

---

[16] *See* Docket No. 57 at 1-2.

[17] Docket No. 22 at 2.

[18] Exhibit I to Docket 17.

[19] *See* Docket 22 at 1; *see also* Exhibit I to Docket 17.

[20] *See* Docket No. 30 at 2-3 ("Plaintiffs proposed limiting each party's initial search to (1) email archives of five custodians on each side, (2) within the time frame of the Agreement and related negotiations, and (3) using a set of search terms proposed by the other side. . . . F5 [argued] that the proposed terms would result in extraordinary burden [and] proposed an alternative set of search terms. . . . Unfortunately, the parties were unable to agree on search terms, and so Plaintiffs filed this motion.").

4
Case No.: 5:12-cv-02574-EJD (PSG)
ORDER

Plaintiffs' motion to compel production of documents is DENIED.

## B. F5's Motion to Compel Production for Inspection

F5 asks the court to require Plaintiffs to produce two laptops used by its employees on the grounds that there has been a "clear breakdown" in the process of collecting and disclosing emails to which it is entitled.[21] Plaintiffs object to this request on two grounds. First, they argue that F5 has not demonstrated that the benefit of such discovery would outweigh the burden it would impose on them.[22] Second, they point out that F5's request for one of the laptops was untimely, as it was raised for the first time after both the service of discovery requests and the completion of fact discovery in general.[23]

The court agrees with Plaintiffs that production of the laptops is too rash a remedy at this stage. Although Plaintiffs' initial email productions were obviously incomplete, the court understands that they have since supplemented the productions to complete them. Further, as Plaintiffs point out in their opposition, production of electronic devices for physical inspection is most commonly granted where there is evidence of bad faith by the opposing party.[24] Here, Plaintiffs have already produced the emails that raised concerns for F5, and they commissioned a full forensic inspection of one at least one of the laptops to recover any additional emails that may be relevant.[25] F5 fails to demonstrate how, specifically, these measures are insufficient to remedy Plaintiffs initial error. Finally, F5 has failed to identify what specific documents it hopes to recover from these inspections that have not already been produced. Without a clear and specific objective,

---

[21] Docket No. 46 at 5.

[22] *See* Docket No. 55 at 4-8.

[23] *See id.* at 8.

[24] *See id.* at 6-7.

[25] It is unclear from the papers whether Plaintiffs have searched Mr. Casabonne's laptop for additional emails that may not have appeared on the server or conducted a forensic inspection of the computer for previously deleted emails.

5

Case No.: 5:12-cv-02574-EJD (PSG)
ORDER

the court is not inclined to authorize an intrusive fishing expedition after discovery in this matter has already closed.

If Plaintiffs have not yet conducted a search and forensic inspection of Mr. Casabonne's laptop for emails missed in their initial disclosure, they should do so immediately. With respect to any further relief, F5's motion is hereby DENIED.

**IT IS SO ORDERED.**

Dated: October 17, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge